UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANDREA M. JONES, <br><br> Plaintiff, <br><br> v. <br><br> MSI CREDIT SOLUTIONS, LLC, <br><br> Defendant. | CIVIL COMPLAINT <br><br> CASE NO. 3:23-cv-01796 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** ANDREA M. JONES ("Plaintiff"), by and through the undersigned counsel, complaining as to the conduct of MSI CREDIT SOLUTIONS, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Credit Repair Organization Act ("CROA") pursuant to 15 U.S.C. § 1679 *et seq.*, the Missouri Credit Services Organizations Act ("MCSOA") under MO. Stat. § 407.635 *et seq.*, and the Missouri Merchandising Practices Act ("MMPA") under §407.010, *et seq.*, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant resides within, conducts business within, and a substantial portion of the events or omissions giving rise to the claims occurred within, the Northern District of Texas.

## PARTIES

4. Plaintiff is a consumer over 18 years of age residing in Raytown, Missouri.

5. Defendant is a credit repair organization offering consumers the ability to improve their credit through its offered services. Defendant is a limited liability company organized under the laws of the state of Texas with its principal place of business located at 12750 Merit Drive, Suite 400, Dallas, Texas.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In or around January 2019, Plaintiff began experiencing financial hardship that resulted in her falling behind on a variety of consumer accounts.

8. Shortly thereafter, Plaintiff's creditors began reporting late payments to her credit reports resulting in a decreased rating.

9. Plaintiff desired to purchase a mortgage loan, however, she was unsatisfied with the current standing of her consumer credit reports and began researching companies to help her improve her credit rating in hopes of purchasing a home.

10. Plaintiff subsequently happened upon Defendant's services.

11. Initially, Plaintiff reached out to inquire information of Defendant's services and informed Defendant that she sought to improve her credit so she may purchase a home.

12. On January 28, 2019, after speaking with Defendant and getting an idea of its services, Plaintiff entered into a contract with Defendant for the provision of credit repair services given Defendant's representations that its program would be able to help Plaintiff increase her credit score within months so she may obtain a home mortgage.

13. Plaintiff paid an initial fee of $1,020.00 to Defendant prior to Defendant completing any of the services it represented it would perform for Plaintiff.

14. Defendant characterized this initial payment as being completed in connection with tasks such as gathering information regarding Plaintiff and inputting Plaintiff into its system, which did not include the full and complete performance of the credit repair services it represented it would provide to Plaintiff.

15. Defendant performed these "initial services" within a few days of Plaintiff signing up for Defendant's services.

16. After this initial upfront fee, Plaintiff began making payments of approximately $98.00 per month to Defendant for its services.

17. Plaintiff proceeded to make her monthly payments to Defendant on a consistent and timely basis for many months.

18. After completing multiple monthly payments to Defendant, Plaintiff was growing increasingly more disappointed in Defendant's failure to improve her credit rating and remove items from her credit reports, so she expressed her concerns.

19. Defendant was unable to alleviate Plaintiff's concerns and failed to improve Plaintiff's credit rating despite taking payments from Plaintiff.

20. Throughout their dealings, Defendant deceptively and misleadingly strung Plaintiff along, telling her what she wanted to hear in order for Plaintiff to keep making payments, only to

turn around and fail to deliver on the promises and representations that induced Plaintiff's continued participation in Defendant's credit repair services. Plaintiff detrimentally relied on Defendant's false promises.

21. Furthermore, Defendant repeatedly suggested to Plaintiff that it was working on sending credit disputes on her behalf as a means to more promptly address the issues on Plaintiff's credit reports; however, Defendant's conduct in this regard deceptively and misleadingly represented the extent to which the credit reporting agencies are obliged to respond to credit disputes submitted by credit repair organizations.

22. Overall, Plaintiff was promised that her credit rating would increase, but despite paying over $1,000 for incomplete services Plaintiff's credit rating failed to increase.

23. In fact, Plaintiff's credit rating had decreased since enrolling into Defendant's credit repair services.

24. Dissatisfied with the significant sums of money paid for deficient credit repair services, Plaintiff cancelled her contract with Defendant in January 2020.

25. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned regarding her rights.

26. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

**COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT**

27. Plaintiff repeats and realleges paragraphs 1 through 26 as though fully set forth herein.

28. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

29. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

   a. **Violations of CROA § 1679b(a)**

30. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

31. Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it could provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant represented that its services would result in an increase in her credit score by reviewing Plaintiff's credit reports and disputing any fraudulent, inaccurate and misleading debts with her creditors; however,

5

Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff.

32. Further, Defendant violated the CROA when it deceptively represented to Plaintiff that its disputes would be responded to by the credit reporting agencies. Inherent with Defendant's representations was the notion that there would be an obligation for an investigation to be triggered by Defendant's submission of a credit dispute on Plaintiff's behalf. However, pursuant to 12 C.F.R. § 1022.43(b)(2), the credit reporting agencies are under no obligation to respond to disputes submitted by credit repair organizations like Defendant.

    b. **Violations of CROA § 1679b(b)**

33. The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

34. Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant has maintained Plaintiff's initial fees and monthly payments, and refused to return the same, despite Defendant having failed to perform any of the services that would justify Defendant's retention of Plaintiff's payments.

    c. **Violation of CROA § 1679c**

35. The CROA, pursuant to 15 U.S.C. § 1679c(b), provides that the disclosures required by the CROA must be provided in a form separate from any contract executed between a credit repair organization and buyer.

36. Defendant violated § 1679c(b) by providing the required disclosures in the contract it entered with Plaintiff, rather than in a separate document. Defendant engaged in this conduct so as to diminish the extent to which Plaintiff would be knowledgeable of her rights under the CROA and various other laws, hoping that keeping Plaintiff in the dark would allow Defendant to perpetrate its fraudulent and deceptive conduct upon a consumer who was unaware of their rights. Had Defendant provided these disclosures in the required manner, Plaintiff would not have suffered the pecuniary harm brought about by Defendant's conduct.

**WHEREFORE**, Plaintiff, ANDREA M. JONES, respectfully requests that the Honorable Court enter judgment in her favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

    c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

    d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

    e. Awarding any other relief as this Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE MISSOURI CREDIT SERVICES ORGANIZATION ACT

37. Plaintiff restates and realleges paragraphs 1 through 36 as though fully set forth herein.

38. Plaintiff is a "buyer" as defined by MO. Stat. § 407.635.(1).

39. Defendant is a "credit service organization" as defined by MO. Stat. § 407.637(1).

    a.    **Violation of MCSOA § 407.638**

40.    The MCSOA, pursuant to MO. Stat. § 407.638, provides a list of prohibited conduct for credit services organizations.

41.    Pursuant to § 407.638(1), credit services organization cannot "Charge a buyer or receive from a buyer money or other valuable consideration before completing performance of all services the credit services organization has agreed to perform for the buyer…"

42.    As outlined above, Defendant violated § 407.638(1) in much the same way it violated 15 U.S.C. §§ 1679b(b).

43.    Pursuant to § 407.638(3), credit services organization cannot "Make or use a false or misleading representation in the offer or sale of the services of a credit services organization..."

44.    Similarly, pursuant to § 407.638(4), a credit services organization cannot "[e]ngage, directly or indirectly, in a fraudulent or deceptive act, practice or course of business in connection with the offer or sale of the services of a credit services organization;"

45.    As outlined above, Defendant violated the above referenced provision of the MCSOA in much the same way it violated 15 U.S.C. §§ 1679b(a)(3)-(4).

46.    As alleged above, Plaintiff was harmed by Defendant's misconduct.

**WHEREFORE**, Plaintiff ANDREA M. JONES, respectfully requests that the Honorable Court enter judgment in in her favor as follows:

    a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b.    Awarding Plaintiff actual damages pursuant to MO. Stat. § 407.644;

    c.    Awarding Plaintiff punitive damages pursuant to MO. Stat. § 407.644;

    d.      Awarding Plaintiff's costs and reasonable attorney fees, pursuant to MO. Stat. § 407.6445; and,

    e.      Awarding any other relief this Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

47.    Plaintiff repeats and realleges paragraphs 1 through 46 as though fully set forth herein.

48.    Defendant is a person as defined in the MMPA, Mo. Rev. Stat. § 407-010(5).

49.    The MMPA defines "Merchandise" to include "any objects, wares, goods, commodities, intangibles, real estate or services." § 407-010(4)

50.    The MMPA further defines "sale" as "any sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit." § 407-010(6).

51.    Defendant's actions towards Plaintiff belong to "trade" or "commerce," as defined in Mo. Rev. Stat. Ann. § 407-010(7).

52.    The MMPA declares that:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce is . . . declared to be an unlawful practice. . . . Any act, use or employment declared unlawful by this subsection violations this subsection whether committed before, during or after the sale, advertisement or solicitation. Mo. Rev. Stat. § 407.020.

53.    Defendant's credit repair services are governed by the MMPA

54.    Defendant violated the MMPA by engaging in unfair and deceptive practices towards Plaintiff. Defendant deceptively represented that its services would result in an increase in her credit score by reviewing Plaintiff's credit reports and disputing any fraudulent, inaccurate

9

and misleading debts with her creditors; however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiff.

55. Defendant's misrepresented services were unfair to Plaintiff as she detrimentally relied on Defendant's promises to repair her credit reports so she may improve her overall creditworthiness and purchase a home.

56. As alleged above, Plaintiff was harmed by Defendant's misconduct.

**WHEREFORE**, Plaintiff ANDREA M. JONES, respectfully requests that the Honorable Court enter judgment in her favor as follows

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages and punitive damages pursuant to Mo. Rev. Stat. §§ 407.025(1)(1) & (2)(1);

c. Awarding Plaintiff costs and reasonable attorney fees pursuant to Mo. Rev. Stat. §§ 407.025(2)(2);

d. Awarding any other relief as this Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: August 11, 2023                                         Respectfully submitted,

**ANDREA M. JONES**
By: */s/ Marwan R. Daher*
Marwan Rocco Daher, Esq.
*Attorney for Plaintiff*
Sulaiman Law Group, Ltd.
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
Fax: (630) 575-8188
mdaher@sulaimanlaw.com